UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------x
DANIELLE SUTTON,

|  |  |  |
|---|---|---|
| | *Plaintiff*, | CV 18-7434 |
| | | (JS)(ARL) |
| -against- | | |

STONY BROOK UNIVERSITY, NICOLE GALANTE in her Individual
and Official Capacities, CHARLES TABER in his Individual and
Official Capacities, SAMUEL L. STANLEY, JR., in his Individual and
Official Capacities,

*Defendants*.
-------------------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**


LETITIA JAMES
Attorney General of the State of New York
200 Old Country Road, Suite 240
Mineola, New York 11501
(516) 248-3302
Attorneys for Defendants



RICHARD HUNTER YORKE
Assistant Attorney General
Of Counsel

TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

RELEVANT FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT ......................1

STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(B)..........................................4

     A.    Fed. R. Civ. P. 12(b)(1) ................................................................4

     B.    Fed. R. Civ. P. 12(b)(6)................................................................4

ARGUMENT ..............................................................................................5

     I.    THE MATERIAL THE COURT MAY CONSIDER ............................................5

     II.    ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY…………..……..7

     III.    DEFENDANT STANLEY LACKS PERSONAL INVOLVEMENT………..…..9

     IV.    TITLE IX DISCRIMINATION…………………………………….……10

     V.    TITLE IX HOSTILE EDUCATION ENVIRONMENT…………………………12

     VI.    TITLE IX RETALIATION……………………………………………....15

     VII.    FIRST AMENDMENT RETALIATION………………………………….19

     VIII.    CONSTITUTIONAL DUE PROCESS………………….…………………20

     IX.    PENDANT STATE LAW CLAIMS………………………………………23

CONCLUSION........................................................................................25

## PRELIMINARY STATEMENT

Defendants Stony Brook University ("SBU"), Nicole Galante, Charles Taber, and Samuel Stanley submit this Memorandum of Law in Support of their Motion to Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure (FRCP) 12(b)(1) and 12(b)(6).

Plaintiff *pro se* filed a Second Amended Complaint seeking to vacate an academic dismissal, reinstatement and the award of a degree, as well as compensatory damages, loss of earnings, loss of professional opportunities, damages to reputation, special and punitive damages, and five million dollars for each count in the Second Amended Complaint. Plaintiff has alleged discrimination and retaliation under Title IX of the Educational Amendments of 1972 (20 U.S.C.S. § 1681, *et seq*.); retaliation in violation of the First Amendment and violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; and various state law claims.

## RELEVANT FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Plaintiff alleges that she was enrolled in the English Education Graduate Program at SBU from August 2015. Second Amended Complaint at ¶1 ("¶"). In May 2017, she was approved by Defendant Nicole Galante, Acting Director of the English Education Teaching Program, and Sharon Anthony, Director of Student Teaching, to student-teach in the Fall 2017 semester. ¶6. Thomas Mangano was assigned as Plaintiff's student-teaching Supervisor and instructor. ¶42.

On May 18, 2017, Mangano sent a group text message to the five student-teachers (three females, two males) in his Fall semester class, inviting them to a breakfast meeting. ¶60. Mangano routinely held these working meetings with his seminar groups, and the groups often met for breakfast at a hotel restaurant. ¶¶77, 82-3. Plaintiff was the sole student-teacher, male or female, who refused to attend the group meeting. ¶71. Mangano attempted several times over several months to reschedule the meeting Plaintiff skipped, but Plaintiff would not attend. ¶¶61-68.

1

Plaintiff alleges that at the August 30, 2017 seminar class, Mangano asked the class if anyone would be opposed to Saturday breakfast seminar meetings, and that she objected. She alleges Mangano expressed surprise. ¶¶72-75. Plaintiff alleges that Mangano said to her, "You kept putting me off. I felt like you were brushing me off. That's not how you treat your supervisor," and that Mangano expressed concern at her refusal to attend meetings with her supervisor. ¶81-2.

Plaintiff alleges that on several occasions Mangano observed her teaching at school, interacted with her at school, contacted her cooperating teacher, Dawn DelSeni, and attempted to contact Plaintiff, expressing concern that she was not responsive. ¶¶89-100, 112, 122, 128. Plaintiff ignored requests to contact her student-teaching supervisor. ¶96, 112. Plaintiff alleges that Mangano made disparaging comments about her decision to become an English Teacher and was critical of her teaching performance. ¶¶106-7, 109, 111, 114. Plaintiff alleges that Mangano said he could not write her a letter of recommendation for a teaching job because she ignored attending the meeting. ¶111. Plaintiff further alleges mundane interactions with Mangano. ¶¶50-6, 99-104, 116-20. Plaintiff alleges that Mangano told her she pranced around the room during her student teaching, ¶108, that Mangano stated generally that women looked nice in dresses, and that Mangano and Sharon Anthony told students generally that ladies wearing dresses and men wearing suits was the only professional attire. ¶129. Plaintiff alleges that Mangano's expectation that she arrive at Sachem High School on time was unreasonable and unsafe, and complains that her host-teacher, Dawn DelSeni, expected her to shadow her schedule. ¶¶130, 144.

Plaintiff alleges that on or about September 29, 2017, she complained to Galante about "Mangano's behavior and perceived harassment." ¶151. On October 9, 2017, Galante informed Plaintiff that she was being assigned to Sharon Anthony's class. ¶154. Plaintiff alleges that on

2

October 11, 2017, Galante informed her that October 13, 2017 would be her last day student-teaching for the semester (¶159), and that on or about October 12, 2017, Galante sent an email to Plaintiff's cooperating teacher, Dawn DelSeni, informing her that Plaintiff would no longer be student-teaching under her supervision.  ¶165.

Plaintiff alleges that on or about October 16, 2017, Galante emailed her a "Spring 2018 Student Teaching Contract" and wrote, "If you are permitted to continue student teaching, you will do so in the Spring, 2018 semester . . . and you will do so after signing a contract . . ."  ¶174. Plaintiff alleges that on October 16, 2017, Galante emailed, informing her that if she did not respond with her agreement by October 24, 2017, she would be dismissed.  ¶177.

Plaintiff alleges that on October 18, 2017, she went to Sharon Anthony's Seminar class but was told to leave because she had not signed the contract Galante sent.  ¶180.  Plaintiff alleges that on October 19, 2017, Dean of the School of Professional Development, Ken Lindblom told her, "At this point, you have two choices: 1) agree to the program Dr. Galante has set out for you; or, 2) refuse to comply or ignore the agreement, and be dismissed from the program.  Please note that selecting number 1 does not guarantee you a new student teacher placement." ¶182.  Plaintiff does not allege that she responded affirmatively to Galante's or Lindblom's emails by October 24, 2017. Plaintiff alleges that on October 25, 2017, Defendant Charles Taber "dismissed/unenrolled" Plaintiff, because she refused to agree to the assignment.  ¶192, Pl's Ex. B.

Plaintiff appealed the dismissal on November 5, 2017.  ¶230.  On November 13, 2017, Plaintiff's withdrawal from the School of Professional Development was reversed pending a determination of her appeal.  ¶238, Pl's Ex. C.  Plaintiff alleges that a step in the appeal was bypassed at the direction of Ken Lindblom, a non-party.  ¶¶229-32, 234-7.  Plaintiff alleges that after review by the appeal panel, Taber denied her appeal by letter dated December 19, 2017. ¶246.

## STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(B).

**A.      Fed. R. Civ. P. 12(b)(1)**

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (*quoting Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Under FRCP 12(b)(1), a complaint "is properly dismissed for lack of subject matter jurisdiction…when the district court lacks the statutory or constitutional power to adjudicate it." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). As the party asserting subject matter jurisdiction, Plaintiff has the burden of establishing by a preponderance of the evidence that such jurisdiction exists, and the Court should not draw argumentative inferences in his favor. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *see also Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). A court resolving a Rule 12(b)(1) motion may refer to evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (*citing Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). Indeed, a court must "look to the substance of the allegations to determine jurisdiction." *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993).

**B.      Fed. R. Civ. P. 12(b)(6)**

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. In *Erickson v. Pardus*, the Supreme Court further clarified that the complaint must give the defendants "fair notice of what the . . . claim is and the grounds upon which it rests.'" *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court

4

recognized that while Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and specific facts are not necessary; the pleading must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*, (*quoting Twombly*, 550 U.S. at 555).  The Court of Appeals for the Second Circuit likewise has held that a complaint must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *See Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original).

A "formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  Allegations "that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, are insufficient to state a claim." *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

## ARGUMENT

### I.  Materials The Court May Consider

For the purposes of this Motion, the Second Amended Complaint is deemed to include documents referred to therein.  *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-154 (2d Cir. 2002); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).  A document is deemed part of the complaint where it is expressly referred to in the complaint, is integral to the complaint, or can properly be the subject of judicial notice.  *See L-7 Designs, Inc. v. Old Navy*, 647 F.3d 419, 422 (2d Cir. 2011); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless

consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 153 (internal quotations omitted). "[D]ocuments that are integral to the complaint, are partially quoted in the complaint, or were relied upon by plaintiff in drafting the complaint may be properly considered on a motion to dismiss." *See McDowell Research Corp. v. Tactical Support Equip., Inc.*, 2009 U.S. Dist. LEXIS 80884, *8 (W.D.N.Y. Sept. 4, 2009)(*citing Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).[1]

The Second Amended Complaint explicitly incorporates various documents. Plaintiff refers to and characterizes a group text message from Thomas Mangano to her student teaching section. ¶¶60, 264-5. Plaintiff expressly refers to her September 29, 2017 email to Nicole Galante, characterizing it as a complaint about Thomas Mangano's "behavior and perceived harassment." ¶151-2. This document is integral to Plaintiff's claims, as she claims that she was retaliated against for making this "complaint." ¶¶151-5, 265. Plaintiff selectively quotes an October 3, 2017 email from Galante to her, to characterize Galante's motivation as retaliation. ¶155. Plaintiff quotes an October 9, 2017 email from Galante to her. ¶154. Plaintiff quotes an October 11, 2017 email from Galante to her, which summarized a meeting between them. ¶¶156, 189. Plaintiff refers to an October 11, 2017 email from Galante to Dawn DelSeni, Plaintiff's Cooperating Teacher. ¶165. Plaintiff refers to and quotes an October 16, 2017 email from Galante to her, including attachments. ¶¶174, 177, 265-6, Pl's Ex. A. Plaintiff explicitly refers to and attaches the October 25, 2017 letter from Charles Taber to her (¶194), and the November 13, 2017 letter from Taber to her (¶238). Plaintiff refers to and quotes the December 19, 2017 letter from Taber to her, as well as

---

[1] The Second Circuit has explained that: "generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. Accordingly, where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Chambers*, 282 F.3d at 153.

characterizing the enclosed GCAC report which concluded that she was rightfully dismissed. ¶¶242-50, 291.

## II.  Eleventh Amendment and Sovereign Immunity

The Court lacks jurisdiction over Plaintiff's 42 U.S.C. Section 1983 claims against Defendant SBU and the Defendants in their official capacities.  The Eleventh Amendment and principles of sovereign immunity bar claims against States and State agencies, and individuals in their official capacities pursuant to Section 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Quern v. Jordan*, 440 U.S. 332, 341-345 (1979).  New York State has not waived its immunity in Section 1983 actions.  *See Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-39 (2d Cir. 1977).  SBU is not a "person" against whom a Section 1983 action can be brought.  *See Quartarro v. Catterson*, 917 F.Supp 919, 932 (E.D.N.Y. 1996).  *See also Will*, 491 U.S. at 71.

As Section 1983 has not validly abrogated the State's sovereign immunity, Plaintiff's claims of violations of the First and Fourteenth Amendments cannot be maintained against SBU and the Defendants in their official capacities.  *Koumantaros v. City Univ. of New York*, 2007 U.S. Dist. LEXIS 19530, *15 (S.D.N.Y. March 15, 2007); *Colvin v. State Univ. College at Farmingdale*, 2014 U.S. Dist. LEXIS 85678 at *26-*27(E.D.N.Y. June 19, 2014); *Brewer v. Brewer,* 34 Fed. Appx. 28, 30 (2d Cir. 2002); *Buckley v. New York*, 2012 U.S. Dist. LEXIS 190837, *12 (E.D.N.Y. September 29, 2012).

*Ex Parte Young* is inapplicable to SBU.  *Nash v. City Univ. of N.Y.*, 2003 U.S. Dist. LEXIS 8266, *5 (S.D.N.Y. May 15, 2003); *Doe v. Coumo*, 2009 U.S. Dist. LEXIS 90006, *18 (S.D.N.Y. September 29, 2009); *Marsh-Godreau v. Suny Coll.*, 2016 U.S. Dist. LEXIS 31449, *9 (N.D.N.Y. March 11, 2016).  Nor has Plaintiff alleged facts that Galante or Taber and Stanley (both of whom

are no longer at SBU) have authority to retroactively reinstate her years after an academic dismissal that was appealed to a disinterested appeals board, authority to alter the core academic requirements of the SBU program, alter her transcript, or award a degree. *Ex parte young* is inapplicable where the defendants cannot provide the relief a plaintiff seeks. *Siani v. State Univ. of N.Y.*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014); *Falcon v. City Univ. of N.Y.*, 2016 U.S. Dist. LEXIS 92396, *24 (E.D.N.Y. July 15, 2016); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232 (E.D.N.Y. 2015) (various defendants had left the employ of CUNY and plaintiff failed to allege the others had capacity to reinstate); *Sutter v. Dibello*, 2019 U.S. Dist. LEXIS 136665, *24 (E.D.N.Y. Aug 12, 2019) (same), *adopted by* 2019 U.S. Dist. LEXIS 150417 (E.D.N.Y. Sept. 4, 2019).

Defendant Stanley has no connection to any alleged action, for purposes of *Ex Parte Young*. *See McCluskey v. Comm'r of Nassau County Dep't of Soc. Servs.*, 2013 U.S. Dist. LEXIS 127614, *12 (E.D.N.Y. July 23, 2013) ("where the official sued for an alleged violation of § 1983 lacks a direct connection to the alleged conduct, that official's motion to dismiss the complaint against him will be granted."). Plaintiff alleges no facts that Defendant Stanley was involved in her academic dismissal. *See Kelly v. New York State Civ. Serv. Comm'n*, 632 Fed. Appx. 17, 18 (2d Cir. 2016); *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010)("To fall within the *Ex Parte Young* exception, however, the defendant state officer must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party"). In response to Defendants' prior motion to dismiss, Plaintiff adds a laundry list alleging Stanley's supervisory duties (¶¶9-30), as well as her personal attempts to contact him (¶¶172-3, 179), and outside party's FOIA letters to Stanley months after her dismissal (¶¶20, 22). Merely writing to supervisory officials does not provide personal liability. *See Richards v. City of New York*, 2007 U.S. Dist.

LEXIS 23726, *25 (E.D.N.Y. Mar. 30, 2007); *Wood v. Town of E. Hampton*, 2010 U.S. Dist. LEXIS 104806, *65 (E.D.N.Y. Sept. 30, 2010).  Plaintiff fails to allege any direct connection to the dismissal decision.

All state law claims against SBU or official-capacity Defendants fail as "the Eleventh Amendment bars adjudication of pendent state law claims against non-consenting state defendants in federal court."  *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540-41, 122 S.Ct. 999 (2002); *see also Gentleman v. Brook*, 2017 U.S. Dist. LEXIS 87225, *18 (E.D.N.Y. June 6, 2017)(breach of contract claims against SBU precluded); *Gomez v. Stonybrook Univ.*, 2016 U.S. Dist. LEXIS 16542, *37 (E.D.N.Y. January 28, 2016)(dismissing negligence claims against SBU).

Further, the individual-capacity Defendants are protected from liability by the doctrine of qualified immunity.  "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 337 (E.D.N.Y. 2014)(internal citations and quotations omitted).

### III.  Defendant Stanley Lacks Personal Involvement

Plaintiff alleges no facts supporting Defendant Stanley's personal involvement, a requirement for an individual-capacity claim under Section 1983.  *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).  A supervisor is not liable solely as a supervisor because there is no respondeat superior liability under Section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

The Second Amended Complaint lacks any facts demonstrating the personal involvement of Defendant Stanley, as argued above.  Plaintiff's First Amendment and Due Process claims

against Defendant Stanley in his individual capacity should thus be dismissed. *Caldwell v. Webber*, 2015 U.S. Dist. LEXIS 11888, *9 (E.D.N.Y. January 30, 2015).

## IV.  Title IX Discrimination

Plaintiff fails to state a claim of Title IX discrimination.  Under Title IX, a *prima facie* case for gender discrimination is established by a plaintiff's showing: "(1) that she was excluded from participation in (or denied the benefits of, or subjected to discrimination in) an educational program; (2) that the program receives federal assistance; and (3) that the exclusion was on the basis of sex, i.e., gender."  *See Manolov v. Borough of Manhattan Cmty. College*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2012).  "Discrimination is defined as disparate provision of programs, aid, benefits or services or inequitable application of rules or sanctions."  *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 150 (N.D.N.Y. 2011).[2]

Title VII cases provide the proper framework for analyzing claims under Title IX.  *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).  As with analysis under Title VII, "Naked assertions of [] discrimination ... without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss."  *Sanders-Peay v. N.Y. City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 161506, *7 (E.D.N.Y. Nov. 18, 2014)(internal symbols omitted).

Plaintiff alleges no specific facts to plausibly allege a claim of gender discrimination.  She alleges that Thomas Mangano invited all students in his section via group text to a breakfast meeting prior to the beginning of the semester.  ¶60.  The group text was sent to the five students, both male and female, in Plaintiff's student teaching section.  *See* Galante Declaration dated March

---

[2] To the extent that Plaintiff alleges Title IX claims against Defendants in their individual capacities, numerous courts in this circuit have held that Title IX does not provide for individual liability.  *See Miotto v. Yonkers Pub. Schs.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (collecting cases).

20, 2019 ("Galante Decl."), Exhibit 1.  Mangano states that he is "very much looking forward to sharing a successful student teaching experience" in the Fall and invites all of his students to a "working breakfast" to "develop a plan of action that will support your student teaching goals and objectives" as well as "address any additional concerns" the students have.  Mangano writes that he looks "forward to seeing all of you as we make plans for your exciting student teaching experience in the fall," and asks them to, "Kindly confirm."

Plaintiff alleges that she subjectively felt uncomfortable after Mangano attempted to contact her "several times all summer" to reschedule the meeting that she alone skipped.  ¶68, 69. Plaintiff alleges that Mangano made critical comments to her because she was the sole student to skip this meeting prior to the beginning of the student-teacher placement.  ¶49, 71.  Plaintiff alleges no facts that any criticism was motivated by gender.  She was the only student, male or female, who did not meet with her supervisor prior to beginning her placement.  ¶60.

Plaintiff alleges that Mangano told her she "'pranced' around the room during her Student Teaching," without specifying how this comment was directed at her gender or amounted to discrimination.  *See Pucino v. Verizon Communs., Inc*., 618 F.3d 112, 118 (2d Cir. 2010)(rejecting a rule that would automatically command an inference of gender-based hostility to be drawn from use of the term "bitch"); *Ripa v. Stony Brook Univ*., 2018 U.S. Dist. LEXIS 98629, *17 (E.D.N.Y. 2018)(use of the term "privileged" to a male student did not support a reasonable inference that it was targeted at his gender).  Plaintiff alleges that Mangano had said generally that women looked nice in dresses, and that both he and Sharon Anthony, the other supervisor, told students that ladies wearing dresses and men wearing suits were the only professional attire.  ¶129.  Plaintiff fails to state how generalized opinions subjected her to discrimination.  Mere use of words that have sexual content or connotations does not equate to gender discrimination.  *See Patenaude v. Salmon River*

11

*Cent. Sch. Dist.*, 2005 U.S. Dist. LEXIS 29066, *16 (N.D.N.Y. 2005)(citing *Oncale v. Sundowner Offshore Services*, Inc., 523 U.S. 75 (1998)).  "The ultimate issue is the reasons for *the individual plaintiff's* treatment."  *Id.* at *17 (citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).  "In other words, was Plaintiff being harassed because of her gender or for some other reason?"  *Id.*

Plaintiff claims without support that the "Spring 2018 Student Teaching Contract" was gender discrimination, and "infringed on Plaintiff's right to First Amendment free expression to choose how to dress."  ¶¶266, 300.  This contract, addressing adherence to standards of timeliness, preparation, professionalism and subject matter mastery, states: "I understand that I am expected to dress and otherwise behave in professionally appropriate ways."  *See* Galante Decl., Exhibit 7.

Plaintiff's own allegations amount to a student-teaching supervisor who was critical that Plaintiff was the only student—male or female—who failed to attend a working group meeting prior to beginning the teaching placement.  Plaintiff provides no specific facts to support her conclusory allegations that this is gender discrimination.  ¶264.[3]

## V.  Title IX Hostile Education Environment

A Title IX hostile education environment claim is "governed by traditional Title VII 'hostile environment' jurisprudence."  *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003).  A plaintiff must allege "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, and that this behavior was sufficiently severe or pervasive to alter the conditions of her educational environment and to create an abusive educational environment, analyzed from the perspective of a reasonable person."  *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005) (internal citations and

---

[3] Nor has Plaintiff alleged facts supporting a theory of selective application of academic standards; she has not alleged a male comparator who was treated differently following similarly refusing to agree to academic requirements.  *Murray v. New York Univ. College of Dentistry*, 1994 U.S. Dist. LEXIS 13880, *15 (S.D.N.Y. September 29, 1994).

quotations omitted).  Plaintiff must allege that she "subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational environment."  *See Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011), *citing Hayut*, 352 F.3d at 745.  The harassment must be "so severe, pervasive, and objectively offensive that it effectively bar[red] . . . access to an educational opportunity or benefit."  *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999).  Isolated incidents typically do not rise to the level of a hostile environment.  *Campisi v. City Univ. of N.Y.*, 2016 U.S. Dist. LEXIS 105078, *17 (S.D.N.Y. August 9, 2016).

Further, "[t]o establish institutional liability for sexual harassment under Title IX, the plaintiff must show that "an official who … has authority to address the alleged discrimination and to institute corrective measures on the [institutional] recipient's behalf has actual knowledge of discrimination … and fails adequately to respond."  *Folkes v. N.Y. College of Osteopathic Med. of N.Y. Inst. of Tech.,* 214 F. Supp. 2d 273 (E.D.N.Y. 2002).  "A school fails to adequately respond if it provides no response or if it provides a response that amounts to deliberate indifference to discrimination."  *Papelino*, 633 F.3d at 89 (internal quotations omitted).  "The school's response to sex discrimination must be clearly unreasonable in light of known circumstances."  *Id.*

Plaintiff fails to allege conduct of a sexual nature.  She summarizes her allegations: "Mangano created a hostile internship and learning environment for Plaintiff after she had refused to go out to Breakfast with him, off campus." ¶ 49.  However, she admits Mangano's meeting was with the entire seminar class. ¶ 60.  Plaintiff alleges only a working meeting that she alone skipped. *See Shalom v. Hunter College of the City Univ. of N.Y.*, 2014 U.S. Dist. LEXIS 112439, at *17

13

(S.D.N.Y. August 13, 2014)(sexual harassment claim fails as a matter of law where no explicit or implicit sexual advances).

Plaintiff alleges that Mangano "bullied" her and made "demeaning, denigrating, disparaging comments about her decision to become an English teacher. . ." ¶106-11.  She alleges that he told her she could be taken out of student teaching if he recommended it (¶ 127) and that he couldn't write her a recommendation letter, given her attitude toward his breakfast meeting (¶111).  Plaintiff alleges her subjective characterization of her supervisor's teaching criticism, not objectively severe or pervasive harassment.  *See Irrera v. Humpherys*, 695 Fed. Appx. 626, 629 (2d Cir. 2017)(sporadic winks, leers, and blown kisses not sufficiently severe or pervasive to alter the conditions of educational environment); *Linell v. New York City Dep't of Educ.*, 2018 U.S. Dist. LEXIS 56849, *35 (E.D.N.Y. March 30, 2018)(sporadic use of abusive language, gender-related jokes, and occasional teasing insufficient to state a hostile-environment claim).

Plaintiff fails to allege gender-based harassment.  *See Hayut*, 352 F.3d at 745.  Gender-neutral comments do not support a hostile environment claim based on sex, absent some basis for inferring that they were discriminatory, such as sexual advances or gender-based hostility.  *See Beale v. Mount Vernon Police Dep't*, 895 F. Supp. 2d 576, n. 6 (S.D.N.Y. 2012); *Shalom*, 2014 U.S. Dist. LEXIS 112439 at *18-19 ("While [plaintiff] may have subjectively felt hurt or offended by [the program director]'s comments or emails, her subjective feelings are insufficient to show that [his] sex neutral statements had a discriminatory motive.").

Plaintiff also fails to allege that Galante's response was "clearly unreasonable."  Galante sought further information, reviewed the group texts, met with relevant parties, and transferred Plaintiff to the supervision of Professor Sharon Anthony.  ¶154.  Galante's response was reasonable as demonstrated by the emails Plaintiff quotes.  *See* Galante Decl. Exhibit 5.  At her

14

meeting with Galante, Plaintiff agreed that she responded not to any actions by Mangano, but to her subjective feelings after she was invited to a working group breakfast.  Galante confirmed that Mangano's meeting was with the entire seminar group, not Plaintiff individually.  The steps Galante took were appropriate, given her meetings and review of the text messages that Plaintiff mischaracterized, along with Plaintiff's unacceptable teaching performance evaluations.  *Id*.; *see Russell v. New York Univ*., 2017 U.S. Dist. LEXIS 111209 (S.D.N.Y. July 17, 2017).

To the extent that Plaintiff alleges "quid pro quo" sexual harassment (¶264), she is required to prove three elements: "(1) the rejection of sexual advances; (2) a tangible school-related (as opposed to employment) consequence; and (3) a causal connection between the two."  *Papelino*, 633 F.3d at 89.  Plaintiff admits that Mangano's meeting was with the entire seminar, and does not allege that this was a sexual advance.  "In the education context, a tangible consequence occurs when 'some benefit or adverse action,' such as a change in a grade, is made to depend upon providing sexual favors to someone in authority."  *Id*.  Plaintiff alleges no such facts.

## VI.  Title IX Retaliation

Title IX prohibits retaliation against a person because that person has complained of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).  "A plaintiff claiming retaliation under Title  IX  must  first  establish  a *prima  facie* case  by  showing:  (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action."  *Baldwin v. New York State*, 690 Fed. Appx. 694, 697 (2d Cir. 2017).  Plaintiff fails on the first and fourth prongs.

First, Plaintiff fails to allege specific facts plausibly suggesting she engaged in protected activity, sufficient to survive a motion to dismiss.  *See Hyman v. Cornell Univ*., 485 Fed. Appx.

465, 468 (2d Cir. 2012); *Sutter v. Dibello*, 2019 U.S. Dist. LEXIS 136665, at \*40-41.  Plaintiff alleges that she complained to Galante about Mangano's "behavior and perceived harassment" on September 29, 2017.  ¶151.  However, Plaintiff's September 29 email to Galante does not complain about gender-based discrimination or sexual harassment.  *See* Galante Decl. Exhibit 2.  Plaintiff acknowledges her teaching deficiencies, "bad" lessons, and lateness.  Plaintiff states that Mangano has a "personal beef" with her because she didn't attend the "student teaching breakfast."  *Id*.  She states "I do not think other student teachers are being treated the way I am being treated," *id*., without differentiating between male or female students.

Plaintiff speculates, without regards to gender, that Mangano is "holding it against me that I didn't meet with him over the summer," and that Mangano "doesn't feel this (pursuing a career in teaching) is the right career choice for me, and, that because he feels this way, he's going to make sure I don't become a teacher."  *Id*.  Plaintiff states that because she looks "young" her supervisor feels he can get away with "disciplining" her, and that "part of the problem is Dr. Mangano feels that I do not respect him."  *Id*.  Plaintiff acknowledges the need to correct all of her "issues," and "teach correctly."  Plaintiff objects to criticism of her teaching performance, and that her supervisor "dwells at length on the negatives."  *Id*.  Plaintiff complains that Mangano stated that she has "a long way to go with my instruction until it is good."  *Id*.

Plaintiff did not complain about gender discrimination.  *See Drumm v. SUNY Geneseo College*, 486 Fed. Appx. 912, 914 (2d Cir. 2012)(allegations that supervisor berated plaintiff and made harsh comments do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination, in Title VII context).  Plaintiff stated that her reasons for skipping a group meeting were that she was busy, and that she subjectively felt uncomfortable meeting.  Plaintiff now conflates her rationalization for skipping a meeting with her current

allegations of gender-based discrimination and harassment.  Plaintiff's September 29 email to Galante did not complain that Mangano discriminated against or harassed her based on gender. Plaintiff clarified with Galante that her email was purely an expression of her emotional reaction and not based on Mangano's actions, and she acknowledged that the breakfast meeting invitation was to her seminar group, not to her personally.  *See* Galante Decl., Exhibit 5.

 As in the Title VII context, generalized complaints are insufficient to show engagement in protected activity; complaints must be sufficiently specific to make clear that a student is complaining about prohibited discrimination.  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98 (2d Cir. 2011).  Here, Plaintiff's email was a smorgasbord of complaints about her supervisor's teaching criticism, along with her subjective excuses for skipping a group meeting. Gender discrimination was not among them.

 Second, Defendants had substantial non-discriminatory bases for Plaintiff's dismissal. *Baldwin*, 690 Fed. Appx. at 697; *Shalom v. Hunter College of the City Univ. of N.Y.*, 645 Fed. Appx. 60, 63 (2d Cir. 2016).  The Second Circuit held recently that the desire to retaliate must be the "but-for cause" of the challenged action, meaning that the complained-of action would not have occurred "but-for" the retaliation.  *Baldwin*, 690 Fed. Appx. at 697; *but cf. Holcomb v. State Univ. of New York*, 698 Fed. Appx. 30, 31 (2d Cir. 2017).

 Plaintiff acknowledged her lateness and lack of preparation in her September 29 email, stating, "I know that I have had some issues with getting to the school when I'm supposed to, and I understand that I had 2 'bad' lessons . . ."  Galante Decl. Exhibit 2.  The emails which Plaintiff selectively quotes also highlight her teaching deficiencies.  The October 11, 2017 email Nicole Galante sent to Plaintiff discusses that Plaintiff did not arrive to school "on time" when the cooperating teacher asked her to, and was leaving early.  Galante Decl., Exhibit 5.  This email also

discusses Plaintiff's reaction to Mangano's group text over the summer, clarifying that the invitation was to Plaintiff's seminar group, not to her individually, and that it was for a "working breakfast" at 8:45am, not 7:30am as Plaintiff claimed. *Id*. They also reviewed Plaintiff's Lesson Evaluation Forms, for September 25, and 29, 2017, and noted that Plaintiff was not rated higher than "developing" in any category, which was not acceptable, and that the Cooperating Teacher's evaluations were negative, and she did not endorse Plaintiff as a teacher. *Id*.

Galante gave Plaintiff the opportunity to remedy her issues. Galante met with Plaintiff on October 11, 2017 to discuss her lack of professionalism, and the evaluations submitted by Mangano and Ms. DelSeni. They discussed conditions that would support the opportunity to student-teach in the Spring 2018 term. *Id*. Galante memorialized the meeting in an email to Plaintiff. After Plaintiff failed to respond to this email, Galante followed up on October 16, 2017, laying out the expectations that Plaintiff had to meet to be considered for another student-teacher placement. Galante Decl., Exhibit 7. This opportunity was contingent upon Plaintiff's completion of a reflection assignment, and her agreement to uphold standards of professionalism. Galante informed Plaintiff that if she did not receive her agreement to these standards and to complete the reflection assignment by October 24, 2017, she would request Plaintiff's dismissal from the English Teacher Education Program. *Id*. Plaintiff acknowledges that Galante informed her that she would request her dismissal if she did not respond affirmatively. ¶177.

Plaintiff's numerous issues with lateness, absence, lack of preparation and unprofessionalism caused her removal from student-teaching. She received the opportunity to student-teach in the Spring 2018 term, contingent upon agreeing to standards of professionalism and the completion of a reflection assignment. Plaintiff chose to ignore these requirements.

## VII.  First Amendment Retaliation

Plaintiff's First Amendment claim fails for similar reasons.  A plaintiff asserting a First Amendment retaliation claim must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.  *See Winslow v. Lemma*, 512 Fed. Appx. 49, 50 (2d Cir. 2013)(citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 106-10 (2d Cir. 2001)).  Plaintiff fails on the third prong.  She makes only conclusory allegations that she was dismissed in retaliation for speech.

Plaintiff was removed from student-teaching because of her lateness, lack of preparation and unprofessionalism; she was dismissed from the program because she refused to complete a reflection assignment and agree to standards of professionalism.  "Regardless of any retaliatory motive, the plaintiff cannot prevail if a defendant can show he or she would have taken the same action even in the absence of the allegedly improper reason." *Holmes v. Poskanzer*, 342 Fed. Appx. 651, 653 (2d Cir. 2009).  In *Garcia v. S.U.N.Y. Health Sciencess. Center*, 280 F.3d at 107, the Second Circuit held that a plaintiff failed to establish a causal connection for retaliation purposes where, as here, numerous SUNY officials on several levels of review approved the plaintiff's dismissal, and "SUNY made a reasonable proposal in good faith that, if accepted, would have avoided [plaintiff]'s dismissal."

Further, Plaintiff alleges no facts that Defendant Taber was aware of her alleged complaint. (¶¶190-194).  She alleges only his role in approving the reasonable recommendations to dismiss her.  *See* Declaration of Melissa Jordan ("Jordan Decl."), dated March 21, 2019, Exhibits 1-3. She thus fails to state any claim of retaliation (or discrimination) against Defendant Taber.  Further, though of no constitutional import, in her allegations against Taber (¶248), Plaintiff has attached

19

and quoted the Stony Brook Graduate Bulletin from Fall 2012 (Complaint Ex. G, H), which was

not effective at the time of her allegations (Fall 2017).

Plaintiff claims that a "gender based" dress requirement infringed her rights.  ¶¶266, 272.

However, the Spring 2018 Student Teaching Contract states an expectation to "dress and otherwise

behave in professionally appropriate ways."  Even accepting Plaintiff's incorrect characterization,

she fails to state a First Amendment claim.  *See Zalewska v. County of Sullivan*, 316 F.3d 314, 320

(2d Cir. 2003)(stating, "a person's choice of dress or appearance in an ordinary context does not

possess the communicative elements necessary to be considered speech-like conduct entitled to

First Amendment protection." and "By contrast, a woman today wearing a dress or a skirt on the

job does not automatically signal any particularized message about her culture or beliefs.").

## VIII.  Constitutional Due Process

Plaintiff fails to state a claim that her due process rights under the 14th Amendment were

violated.  In an educational setting, the requirements of due process for academic decisions are

less stringent from those of disciplinary proceedings.  "The Supreme Court has been clear that

there is no mandatory set of formal procedures required for challenging academic decisions."

*Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 337 (E.D.N.Y. 2014).  "[D]ue process with regard

to academic decision making requires only that: (1) the student is made aware of the school's

dissatisfaction with or expectations for progress, including the possible impact on continued

enrollment, and (2) the ultimate decision to dismiss is careful and deliberate. There is no hearing

requirement."  *de Leon-Garritt v. State Univ. of N.Y. at Buffalo*, 2014 U.S. Dist. LEXIS 177839,

*18 (W.D.N.Y. 2014)(citing *Board of Curators of University of Missouri v. Horowitz*, 435 U.S.

78, 84-85 (1978)); *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d

178, 191 (2d Cir. 2015); *Wolff v. State Univ. of N.Y. College at Cortland*, 2016 U.S. Dist. LEXIS

192245, *57 (N.D.N.Y. 2016).   There is a "well-established legal principle that a student facing academic dismissal is not entitled to a hearing or to cross-examine witnesses." *McCann v. Univ. at Buffalo*, 2016 U.S. Dist. LEXIS 76829, *38 (W.D.N.Y. 2016).

Plaintiff received notice of her deficiencies, the opportunity to correct them, and a careful, deliberative process with multiple levels of review, prior to a final dismissal recommendation by a disinterested appeal panel.   Nicole Galante met with Plaintiff on October 11, 2017.   They discussed Plaintiff's lack of professionalism, lateness, not arriving when Ms. DelSeni asked her to, and leaving school early.   They discussed the Lesson Evaluation Forms completed by Dr. Mangano on September 25, and September 29, 2017, and that Plaintiff was not rated higher than "developing" in any of the categories on either lesson evaluation.   They discussed evaluation forms completed by the Ms. DelSeni.   Ms. DelSeni's evaluations were harsh, negative and did not endorse Plaintiff as a teacher.   Galante informed Plaintiff that her placement in Ms. DelSeni's classroom would end on October 13, 2017, and informed Plaintiff what was required before she could be placed in another classroom as a student representing Stony Brook's English Teacher Education Program: Galante and Plaintiff agreed that the 24 days of student-teaching that Plaintiff completed would count towards her total if she was permitted to continue student-teaching at a later date, and agreed that Plaintiff would complete a deep reflection assignment on her practice, professionalism, and commitment to the profession, which would address the deficiencies identified in the lesson evaluations of Dr. Mangano and Ms. DelSeni.   Galante informed Plaintiff that if she was permitted to continue student-teaching, she would do so in the Spring semester, under the supervision of Professor Sharon Anthony, after signing a contract that detailed the requirements of her commitment.   Galante informed Plaintiff that she would receive a mark of "incomplete" for her student-teaching courses for the Fall 2017 semester, which would be

21

converted to a grade if Plaintiff was permitted to student-teach in the Spring.  Galante explicitly informed Plaintiff of her right to appeal any decision she believed was unfair to the Office of Vice Provost of Graduate and Professional Education, and provided Plaintiff with contact information for Melissa Jordan, to whom she could send an appeal.  *See* Galante Decl., Exhibit 5.  Plaintiff ignored these requirements.

Plaintiff appealed the dismissal decision.  ¶230.  Her appeal was denied by Taber in his December 19, 2017 letter.  ¶246.  Taber informed Plaintiff that the Appeals Committee ("GCAC") came to the unanimous conclusion that she was rightfully dismissed.  *See* Jordan Decl., Exhibit 3. The GCAC produced a final report, attached to Taber's December 19, 2017 letter, which concluded: "it is the opinion of the GCAC that Danielle Sutton was rightfully dismissed from the program."  *Id.*  The GCAC found that the program provided evidence that Plaintiff did not meet the program requirements, and that students with similar failures to perform were treated in a similar manner: given an opportunity to improve, and if they rejected the opportunity or failed to improve, they faced dismissal from the program.  The GCAC found detailed communications from Nicole Galante to Plaintiff, documenting the bases for the actions, along with Plaintiff's performance issues, lateness, lack of preparation, and lack of professionalism.  *Id.*

To the extent that Plaintiff now incorrectly characterizes her dismissal as non-academic[4], or alleges that she was arbitrarily removed from her student-teaching placement, Plaintiff is precluded from alleging a procedural due process violation, because a C.P.L.R. Article 78 Proceeding provides an adequate post-deprivation remedy.  *See Attallah v. N.Y. College of Osteopathic Med.*, 94 F. Supp. 3d 448, 454-458 (E.D.N.Y. 2015), *aff'd* 643 Fed. Appx. 7 (2d Cir. 2016).  This is so regardless of whether Plaintiff pursued an Article 78 challenge.  *Id.* at 458.

---

[4] The Second Amended Complaint has attempted to excise all of Plaintiff's prior references to her "academic" dismissal.  However, references to her "academic" dismissal remain.  ¶268.

Plaintiff's dismissal proceedings exceeded the process she was constitutionally entitled to. *See de Leon-Garritt*, 2014 U.S. Dist. LEXIS 177839, at *18 (citing *Horowitz*, 435 U.S. at 84-85). There is no procedural due process right to attend an appeal hearing, testify, or question witnesses. Plaintiff's procedural allegations—appropriate only to an Article 78 challenge (the statute of limitations for which is long expired)—fail to state a claim upon which relief can be granted.

## IX.  Pendent State Law Claims

Because Plaintiff's federal claims should be dismissed, this Court should decline to exercise pendent jurisdiction over any remaining State law claims. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 117-21(1984); *see also Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims.").  In the alternative, Plaintiff's State law claims against individual-capacity Defendants fail on the merits.

Plaintiff has not pleaded the existence of a contract between her and the individual Defendants.  She has not alleged an agreement or consideration between any individual and her, therefore her breach of contract claim fails. *See Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 219 (E.D.N.Y. 1999); *Jungels v. State Univ. College*, 922 F. Supp. 779, 787 (W.D.N.Y. 1996).

A claim of negligent infliction of emotional distress under New York law has four elements: (1) breach of a duty owed to the plaintiff, which either unreasonably endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Silman v. Utica College*, 2014 U.S. Dist. LEXIS 66668, *13-14 (N.D.N.Y. April 30, 2014).  "A claim of negligent infliction of emotional distress may only proceed where

23

the allegations of conduct are so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community." *Alexiadis v. New York College of Health Professions*, 891 F. Supp. 2d 418, 436 (E.D.N.Y. 2012)(internal citations omitted).  Plaintiff has alleged neither extreme and outrageous conduct, nor a breach of duty owed to her that endangered her physical safety.

Plaintiff's negligence claim largely duplicates her contract claim.  Both claims allege arbitrary removal from Plaintiff's program and that SBU did not comply with its policies and procedures. *Compare* ¶¶304-21 with ¶¶325-9.  "Simply alleging a duty of care does not transform a breach of contract claim into a tort claim.  Thus, courts routinely dismiss tort claims where they are duplicative of a simultaneously pled breach of contract claim." *Prasad v. Cornell Univ.*, 2016 U.S. Dist. LEXIS 161297, *73-74 (N.D.N.Y. February 24, 2016)(internal citations and quotations omitted).  To the extent that Plaintiff is alleging a negligent supervision or hiring claim (¶324), Plaintiff has not alleged facts that Galante and Mangano were in an employer-employee relationship, or that Galante knew or had reason to know of a propensity for tortious conduct. *Papelino*, 633 F.3d at 94-95; *Cort v. Marshall's Dep't Store*, 2015 U.S. Dist. LEXIS 172611, *13 (E.D.N.Y. December 29, 2015)("A conclusory allegation is not enough to state a claim for negligent hiring, retention, supervision, or training."); *Stamile v. County of Nassau*, 2014 U.S. Dist. LEXIS 39320, *24-25 (E.D.N.Y. March 25, 2014).

Plaintiff's claim of breach of fiduciary duty likewise fails.  "The essence of both the breach of contract and breach of fiduciary duty causes of action is that plaintiffs are entitled to money damages because of defendants' educational malpractice.  There is, however, no cognizable cause of action in New York for educational malpractice." *Alligood v. County of Erie*, 299 A.D.2d 840, 840-841 (4th Dept. 2002); *Shelton v. Trs. of Columbia Univ.*, 2005 U.S. Dist. LEXIS 26480, *15

(S.D.N.Y. October 31, 2005), *aff'd in relevant part, vacated in part*, 236 Fed. Appx. 648 (2d Cir. 2007).  "New York's policy of precluding educational malpractice claims may not be circumvented by couching the claim in terms of some other cause of action."  *Ogindo v. DeFleur*, 2008 U.S. Dist. LEXIS 101994, *22-23 (N.D.N.Y. October 16, 2008).  Further, Plaintiff has alleged no facts to support a fiduciary relationship or duty between her and the individual Defendants.  *Schenkman v. New York Coll. of Health Professionals*, 29 A.D.3d 671, 672 (2d Dept. 2006); *Buneo v. City of New York*, 2007 U.S. Dist. LEXIS 24766, *35, n. 24 (E.D.N.Y. March 30, 2007).

Plaintiff's state claims are duplicative of her Due Process claims and allege violations of SBU's policies and procedures.  *E.g.* ¶¶306, 311-12, 316, 326, 336.  The allegations were appropriate only to Article 78 review and should be dismissed.  *Wander v. St. John's Univ.*, 99 A.D.3d 891, 893 (2d Dept. 2012).

## CONCLUSION

Based on the above, the Defendants respectfully request that this Court grant their Motion and Dismiss the Second Amended Complaint in its entirety.

Dated:  Mineola, New York
          September 23, 2019

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants

By: _____ /s/ Richard Yorke _____

Richard Hunter Yorke
Assistant Attorney General
200 Old Country Road, Suite 240
Mineola, New York 11501

To:     Danielle Sutton
        Plaintiff Pro Se
        927 Montauk Hwy.
        P.O. Box 113
        Oakdale, NY 11769
        Email: mycasefiles1@gmail.com