UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
DANIELLE SUTTON,

                        Plaintiff,              MEMORANDUM & ORDER
                                                18-CV-7434(JS)(ARL)

        -against-

STONY BROOK UNIVERSITY,
NICOLE GALANTE,
in her Individual Capacity,
CHARLES TABER,
in his Individual capacity, and
SAMUEL L. STANLEY, JR.,
in his Individual capacity,

                        Defendants.
----------------------------------x
For Plaintiff:      Danielle Sutton, pro se
                    P.O. Box 231
                    Canandaigua, New York 14424

For Defendants:     Richard H. Yorke, Esq.
                    Assistant Attorney General
                    New York State Attorney General's Office
                    200 Old Country Road, Suite 240
                    Mineola, New York 11501

SEYBERT, District Judge:

        Pro se plaintiff Danielle Sutton ("Plaintiff") commenced

this action against defendants Stony Brook University ("SBU"),

Nicole Galante ("Galante"), Charles Taber ("Taber"), and Samuel L.

Stanley, Jr. ("Stanley") (together, the "Defendants") alleging

gender-based discrimination, harassment, and retaliation claims

pursuant to Title IX of the Educational Amendments of 1972, 20

U.S.C. § 1681, et seq. and violations of the First and Fourteenth

Amendments pursuant to 42 U.S.C. § 1983 ("Section 1983").  Before

1

the Court is Defendants' motion to dismiss Plaintiff's Third Amended Complaint ("TAC," ECF No. 54) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot., ECF No. 65; Defs. Br., ECF No. 65-1; Pl. Opp., ECF No. 66; Defs. Reply, ECF No. 73.) For the reasons that follow, Defendants' motion is GRANTED in its entirety.

<u>BACKGROUND</u>[1]

The Court presumes the parties' familiarity with the factual and procedural background as extensively described in the Court's November 5, 2020 Memorandum and Order (the "Prior Order"), which granted Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC") and granted Plaintiff leave to file a Third Amended Complaint. <u>See</u> <u>Sutton v. Stony Brook Univ.</u>, No. 18-CV-7434, 2020 WL 6532937, at *1-4 (E.D.N.Y. Nov. 5, 2020). The facts recited herein include newly asserted allegations and are otherwise repeated as necessary to adjudicate the pending motion.

I.   <u>Facts</u>

Plaintiff's allegations arise out of her mid-semester removal from student teaching and eventual dismissal from the Graduate English Education Program (the "Education Program") at SBU in October 2017. (TAC ¶¶ 2, 62, 86.) Specifically, Plaintiff claims that she was harassed by her student teaching

---

[1] The following facts are taken from the TAC and presumed to be true for the purposes of this Memorandum & Order.

supervisor/instructor Thomas Mangano ("Mangano") (Id. ¶¶ 6-51), who allegedly treated her differently because she was the only female student that refused to attend off-campus Saturday breakfast meetings he held with his seminar class (id. ¶ 25). Plaintiff alleges that "Galante had a grudge against Plaintiff for speaking out against the Supervisor's [b]reakfasts and making her harassment complaint." (Id. ¶ 71.) She also felt "intimidated" by "Mangano's repeated unwanted, unwelcome text messages, phone calls/hang ups, voice messages, and perceived his obsessive persistence to meet/talk on the phone with [her] as harassment." (Id. ¶ 18.) Moreover, "Mangano always found excuses to keep [her] after class/force her to his office" and that "[h]e didn't do this with the other students." (Id. ¶ 40.)

Plaintiff began student teaching at Sachem North High School ("Sachem") on September 6, 2017 with co-teacher Dawn DelSeni ("DelSeni"). (Id. ¶¶ 1, 5, 32.) On September 25, 2017, Mangano visited Plaintiff at Sachem and conferenced with her in a poorly lit library where he "berated" her, made "demeaning, denigrating, [and] disparaging remarks about Plaintiff's choice to become a teacher," ridiculed her "feminine gait," touched her upper arm, and reminded her that refusing his phone calls was a "problem." (Id. ¶¶ 43-44.) Mangano again visited Plaintiff at Sachem on September 26, 2017 and conferenced with her in a poorly-lit area of the library. (Id. ¶ 45.) There, he intimidated her when he

stated, "in an angry voice," that "she was 'wasting' his time." (Id. ¶ 45.)  On September 27, 2017, Plaintiff was the only student in attendance at Mangano's seminar class because other students planned to attend his Saturday breakfast meeting.  (Id. ¶ 46.) During that class, "Mangano held his pen in [an] upright position" and "made slow, sexually suggestive circular motions around the pen cap to intimidate plaintiff." (Id. ¶ 47.)  On September 29, 2017, Mangano made another visit to Plaintiff's classroom at Sachem and conferenced with her in a "poorly lit" conference room.  (Id. ¶ 50.)  There, he told Plaintiff that if she conducted her lesson as she had done, she would pass her edTPA exam.  (Id.)  He also "shifted the conversation to how Plaintiff still wasn't answering his calls/texts and [that] this was a problem." (Id.)  Mangano "threatened Plaintiff with a contract to force her to communicate with him outside of class," and told Plaintiff that he could recommend that Galante remove her from student-teaching.  (Id.)

On September 29, 2017, Plaintiff lodged a complaint with Galante regarding "Mangano's repeated intimidation, ridicule, insult and verbal abuse[.]"  (Id. ¶ 51.)  Plaintiff claims that "Galante hid the complaint and did not forward it for investigation and swept the complaint/discrimination under the rug to silence Plaintiff."  (Id. ¶ 59.)  According to Plaintiff, "[d]irectly following [her] September 29, 2017 complaint about Supervisor Mangano[,] Defendants began a campaign to silence Plaintiff for

speaking out." (Id. ¶ 52.) During class on October 4, 2017,
Mangano did not permit Plaintiff to speak and told her to leave
class early and speak with Galante. (Id. ¶ 58.) On October 9,
2017, Galante informed Plaintiff that she was re-assigned to
Professor Sharon Anthony ("Anthony"). (Id. ¶ 99.) On October 11,
2017, Plaintiff met with Galante to discuss her complaint and
Galante allegedly stated that Plaintiff would have a "break" from
student teaching, with October 13, 2017 as her last day, and she
risked dismissal from SBU if she failed to meet requirements. (Id.
¶¶ 60-63.) SBU never held a hearing prior to removing her from
student teaching, which occurred one day before the scheduled video
segment of the edTPA exam. (Id. ¶¶ 121, 128.)

During her student teaching class on October 12, 2017,
Plaintiff attempted to tell her students the reason she was leaving
mid-semester, but DelSeni, her co-teacher, stopped her. (TAC ¶
66.) On October 13, 2017, Plaintiff emailed Stanley, SBU's
President, regarding her removal from student teaching. Three
days later, she received a response stating that her concerns were
under investigation and that she should communicate with Melissa
Jordan ("Jordan"), SBU's Senior Assistant Dean and School of
Professional Development Manager for Records and Admissions. (Id.
¶¶ 69, 70.) Separately, Plaintiff sent letters to SBU's and
Sachem's staff and administration and on October 16, 2017, Galante
told Plaintiff to stop writing letters. (Id. ¶ 72.) That same

day, Galante emailed Plaintiff a contract along with a deep reflection assignment, stating: "[i]f you are permitted to continue student teaching, you will do so in the Spring, 2018 semester . . . and you will do so after signing a contract." (Id. ¶ 113.) Ken Lindblom ("Lindblom"), Dean of the School of Professional Development, confirmed the required assignment, stating:

> At this point, you have two choices: 1) agree to the program Dr. Galante has set out for you; or, 2) refuse to comply or ignore the agreement, and be dismissed from the program. Please note that selecting number 1 does not guarantee you a new student teacher placement.

(Id. ¶¶ 76, 117.)  Plaintiff did not agree to sign the contract or complete the reflection assignment. (Id. ¶ 115.)  On October 17, 2017, Plaintiff emailed Jordan, stating "Did Dr. Galante happen to mention to you that I had made a complaint to her about a male professor who was harassing me." (Id. ¶ 73.)  Plaintiff did not receive a response. (Id. ¶ 73.)  On October 18, 2017, Plaintiff attended Anthony's seminar class but was told to leave because she was not "currently [s]tudent [t]eaching and had not signed Galante's contract." (Id. ¶ 120.)

Plaintiff alleges that on October 19, 2017, she emailed Galante, stating "And why you are coercing me to sign a contract in order for me to be placed again?  Can you please tell me what specifically did I do wrong to be suspended?  Why am I being

suspended?  This is discrimination & differential treatment." (Id. ¶ 75.)  That same day Lindblom responded:

> You have made unevidenced accusations against specific faculty members . . . You may also have damaged the University's longstanding positive working relationship with an important, local school district.  These are very serious matters, and you are responsible for all the statements, accusations, and threats you have made in writing against specific individuals.  There is likely to be fall-out from your statements.
>
> At this point I would ask Dr. Galante and all faculty in the . . . Education Program to cease communication with you unless and until you respond to the agreement.  Until then, you should communicate only with Ms. Jordan and anyone else to whom she directs you.

(Id. ¶ 76.)

On October 25, 2017, Taber, Vice Provost for Graduate and Special Education at SBU, sent Plaintiff a letter dismissing her from the Education Program for being in default and for failing to meet the Education Program's milestones. (Id. ¶¶ 86, 136, 140.) Plaintiff's university email was disabled on October 30, 2017. (Id. ¶ 90.)  Plaintiff appealed her dismissal on November 5, 2017 but was not provided a hearing date. (Id. ¶¶ 158, 165.) Plaintiff was not permitted to attend classes while her appeal was pending. (Id. ¶ 164.)  The appeals panel met on November 27, 2017, and Plaintiff's appeal was denied without a hearing on December 19, 2017. (Id. ¶¶ 128, 169-70.)

II.  Procedural History

Plaintiff filed her initial complaint on December 28, 2018 (ECF No. 1) and simultaneously moved for a preliminary injunction (ECF No. 2).  By Electronic Order dated February 12, 2019, this Court denied Plaintiff's motion for preliminary injunction, finding that she failed to show that "extreme or very serious" harm would result from the denial of her motion, and that Plaintiff failed to meet the burden of establishing "a clear likelihood of success on the merits." (Feb. 12, 2019 Elec. Order.) Following Defendants' first motion to dismiss (ECF No. 19), Plaintiff sought leave to amend her complaint (ECF No. 22), which this Court granted on April 15, 2019 (Apr. 15, 2019 Elec. Order). Following Defendants' second motion to dismiss (ECF No. 33), Plaintiff again sought leave to file a second amended complaint (ECF No. 36), which this Court granted on August 1, 2019 (Aug. 1, 2019 Elec. Order).

On November 5, 2020, the Court issued the Prior Order, which granted Defendants' motion to dismiss the SAC and granted Plaintiff leave to file a Third Amended Complaint.  First, the Court construed Plaintiff's Title IX claims for gender-based discrimination, harassment, and retaliation only against SBU and dismissed those claims without prejudice.  Sutton, 2020 WL 6532937, at *6-11.  Next, the Court dismissed with prejudice Plaintiff's Section 1983 claims against SBU and Defendants (in their official

capacities) for lack of jurisdiction.  Id. at *11-12.  The Court also dismissed Plaintiff's Section 1983 claims against the individual defendants without prejudice for failure to allege a constitutional violation.  Id. at *12-18.  Having dismissed Plaintiff's federal claims, the Court declined to exercise supplemental jurisdiction over the state law claims.  Id. at *18. Finally, "mindful that Plaintiff has already been granted two opportunities to amend the Complaint," the Court granted Plaintiff leave to file a Third Amended Complaint.  Id.

Plaintiff filed the TAC on December 18, 2020, alleging claims for:  (1) gender-based discrimination and retaliation pursuant to Title IX; (2) First Amendment retaliation; and (3) the denial of due process and equal protection under the Fourteenth Amendment pursuant to Section 1983.

DISCUSSION

I.   Standard of Review

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation marks and citation omitted).  Although the Court must accept all

allegations in the complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

When deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), which has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect").

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of

Civil Procedure 8.   See, e.g., Nielsen v. Rabin, 746 F.3d 58, 63
(2d Cir. 2014).

II.   Documents Considered

        Defendants submitted declarations and/or affidavits
(with exhibits) in support of their motion.   Plaintiff asks the
Court to ignore the exhibits attached to the Declarations and
Affidavits of Galante and Jordan because neither party had first-
hand knowledge of Mangano's alleged harassment or of Plaintiff's
student teaching experience.   (Pl. Opp. at 4; see Galante Decl.,
ECF No. 65-2; Galante Aff., ECF No. 65-14; Jordan Decl., ECF No.
65-10; Jordan Aff., ECF No. 65-17.)   Plaintiffs' request is GRANTED
in part and DENIED in part.

        Generally, when deciding a motion to dismiss, the Court
is "limited to consideration of the Complaint itself." Dechberry
v. N.Y. City Fire Dep't, No. 14-CV-2130, 2015 WL 4878460, at *1
(E.D.N.Y. Aug. 14, 2015).   However, as discussed in the Prior
Order, a court is entitled to consider, inter alia, "documents
attached to or incorporated in [the complaint] by reference,"
"documents 'integral' to the complaint and relied upon in it, even
if not attached or incorporated by reference," and "documents or
information contained in defendant's motion papers if plaintiff
has knowledge or possession of the material and relied on it in
framing the complaint." Sutton, 2020 WL 6532937, at *5 (quoting
Weiss v. Inc. Village of Sag Harbor, 762 F. Supp. 2d 560, 567

(E.D.N.Y. 2011)).  "[T]o be integral to a complaint," the other party must have had (1) "actual notice of the extraneous information," (2) "relied upon the documents in framing the complaint," and (3) "ma[d]e a clear, definitive, and substantial reference to the documents."  Johnson v. Levy, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (internal quotation marks and citations omitted).

The exhibits attached to the Galante and Jordan Declarations are the same exhibits that were submitted in support of Defendants' motion to dismiss the SAC.  Thus, for the same reasons discussed at length in the Prior Order, the Court finds "that all of the exhibits attached to the Galante Declaration and the Jordan Declaration are 'attached to [the complaint] or incorporated in it by reference,' 'integral to the complaint and relied upon in it,' or that '[P]laintiff has knowledge or possession of the material and relied on it in framing the [TAC].'"[2] Sutton, 2020 WL 6532937, at *6 (quoting Weiss, 762 F. Supp. 2d at 567.)  Accordingly, the Court considers the exhibits attached to the Galante and Jordan Declarations.

---

[2] Notably, Plaintiff's October 25, 2017 dismissal letter and the November 13, 2017 letter from Taber to Plaintiff are attached to both the Defendants' motion and to Plaintiff's TAC. (Compare Jordan Decl., Exs. 1 & 2 with TAC, Exs. B & C.)

For substantially similar reasons, and in accordance with the standards discussed above, the Court also considers the Galante and Jordan Affidavits and those documents referenced or integral to the TAC, including the documents duplicative of exhibits attached to the Galante and Jordan Declarations.[3]   See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 112 (2d Cir. 2010) (deciding motion to dismiss and noting that because the plaintiff referred in the complaint to certain e-mails, "the [d]istrict [c]ourt could deem them incorporated in the complaint and therefore subject to consideration").   Therefore, the Court considers the following additional exhibits:   (1) a printout of text messages between Mangano and DelSeni from September 6 through September 29, 2017 (Galante Aff., Ex. E, ECF No. 65-15); (2) an October 9, 2017 email from Galante to Plaintiff informing her that she was switched into Anthony's class (Galante Aff., Ex. J, ECF No. 65-16); (3) an October 19, 2017 email from Plaintiff to Galante, Lindblom, and Jordan questioning the reflection assignment (Galante Aff., Ex. O, ECF No. 65-16); (4) an October 17, 2017 email exchange between Jordan and Plaintiff (Jordan Aff., Ex. C, ECF No. 65-18); (5) an October 25, 2017 email exchange between Plaintiff and Jordan regarding Plaintiff's dismissal (Jordan Aff., Ex. E, ECF No. 65-

---

[3] To the extent there is overlap between the Declarations and Affidavits, the Court cites to the Declarations' exhibits.

18); (6) Plaintiff's November 5, 2017 appeal of the dismissal (Jordan Aff., Ex. F, ECF No. 65-18).  The Court will not consider any other exhibits attached to the Galante and Jordan Affidavits.

Finally, Plaintiff asserts additional facts via three Declarations submitted in support of her opposition.  (Declaration of Gail Sutton, ECF No. 69; Declaration of John Sutton, ECF No. 70; Declaration of Danielle Sutton, ECF No. 67.)  However, a plaintiff "cannot amend her complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss." K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citation omitted).  The Court declines to address the facts raised for the first time in the declarations submitted in opposition to Defendants' motion.

III. Claims Considered

The Court only addresses the TAC's new allegations.  To the extent the TAC re-alleges claims that the Court dismissed, the Court defers to its findings in the Prior Order.  For example, though this Court's Prior Order dismissed Plaintiff's Title IX claims against the individually-named defendants with prejudice, the TAC appears to re-assert Title IX claims against both SBU and the individually-named defendants.  As discussed in the Prior Order, individuals cannot be held liable under Title IX. See Tesoriero v. Syosset Cen. Sch. Dist., 382 F. Supp. 2d 387, 396

(E.D.N.Y. 2005).  Therefore, the Court does not consider Title IX claims against the individual Defendants.

To the extent not explicitly addressed herein, the TAC's claims that are identical to those in the SAC are DISMISSED.

IV.  <u>Title IX Claims</u>

In its Prior Order, this Court dismissed Plaintiff's gender-based discrimination and harassment claims against SBU because Plaintiff failed to allege any facts from which gender-based discriminatory intent could be reasonably inferred, and because she failed to allege facts showing that her education environment at SBU was objectively hostile or abusive.  <u>Sutton</u>, 2020 WL 6532937, at *7-8.  Additionally, the Court found the SAC failed to allege that SBU had the requisite knowledge of gender discrimination.  <u>Id.</u> at *9.  The Court also dismissed Plaintiff's Title IX retaliation claim because she failed to allege any facts plausibly suggesting that she had engaged in a protected activity or a causal connection between her complaint to Galante and her dismissal from the Education Program.  <u>Id.</u> at *9-10 & n.10.

Upon review of the TAC, Plaintiff's allegations of discrimination, harassment, and retaliation are substantially similar to those allegations dismissed in the Prior Order.  And, although the TAC alleges a few new facts, none of these facts cure the deficiencies identified in the Prior Order.  As addressed below, Plaintiff's Title IX claims are DISMISSED with prejudice.

A.    Plaintiff's Title IX Claims Must Be Dismissed

Under Title IX, a plaintiff establishes a prima facie case of gender discrimination by showing that: (1) she was subjected to discrimination in an educational program; (2) the program receives federal assistance; and (3) the discrimination was based on sex.  Manolov v. Borough of Manhattan Cmty. Coll., 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (citation omitted).  "A plaintiff alleging [ ] gender discrimination by a university must do more than recite conclusory assertions.  In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of [ ] discriminatory intent."  Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994).  "[N]aked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss."  Soloviev v. Goldstein, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (citation omitted).  Further, to establish liability under Title IX, a plaintiff must show that "an official who . . . has authority to address the alleged discrimination and to institute corrective measures on the [university's] behalf has actual knowledge of discrimination . . . and fails to adequately respond."  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998).

As is relevant here, a plaintiff may assert a Title IX claim of sexual harassment under two theories: (i) hostile environment; and (ii) quid pro quo harassment. See, e.g., Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 89 (2d Cir. 2011).  To establish a hostile educational environment harassment claim under Title IX, a plaintiff must demonstrate "that [s]he subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of h[er] educational environment." Papelino, 633 F.3d at 89 (citing Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003)).  To establish a quid pro quo claim, plaintiff must allege: (1) the rejection of sexual advances; (2) a tangible school-related consequence; and (3) a causal connection between the two.  Id.

### 1.  Gender-Based Discrimination

Construing the facts in the light most favorable to Plaintiff, the TAC fails to state a gender-based discrimination claim pursuant to Title IX.  Nowhere in the TAC does Plaintiff allege that anyone at SBU referred to her gender, nor does she recite any other fact from which "gender-based discriminatory intent reasonably could be inferred." Manolov, 952 F. Supp. 2d at

532 ("Without such a factual allegation, [ ] discrimination claims cannot survive a motion to dismiss.")

Rather, Plaintiff bases her gender discrimination claim on Mangano's use of "the power of his position and his employer (Stony Brook) to get students to have private off campus Saturday private breakfasts, private text messages and phone calls." (Pl. Opp. at 18; TAC ¶¶ 15-18.)   The SAC alleged that Mangano told Plaintiff that she was the only student that refused to attend any of Mangano's breakfast meetings.   See Sutton, 2020 WL 6532937, at *7 (emphasis added) (citing to the SAC).   Here, the TAC alleges that Mangano stated that Plaintiff was the only "female" who refused to attend his breakfast meetings.   (TAC ¶ 25) (emphasis added).   Yet, the TAC also alleges that, with the exception of Plaintiff, the entire seminar class (consisting of both male and female students) attended the meetings.   (TAC ¶¶ 19-21, 46; Pl. Opp. at 13; see also Galante Decl., Ex. 1.)   Plaintiff's use of "female," without more, is insufficient to support her claim of gender-based discrimination.

"A complaint falls short . . . where, as in this case, it 'fails to incorporate any factual allegations that would indicate how. . . [] gender [] played a role' in the alleged actions against the plaintiff."   Manolov, 952 F. Supp. 2d at 533 (quoting Scaggs v. N.Y. Dep't of Educ., No. 06-CV-0799, 2007 WL 1456221, at *11 (E.D.N.Y. May 16, 2007)).   Notably, Plaintiff does

not allege that she was treated differently <u>because</u> she was female; rather, Plaintiff claims that she was treated differently from the other men and women in her seminar class because she refused to attend her supervisor's breakfast meetings with the rest of the class.  The Court declines to infer gender-based discrimination from such conclusory allegations.  See <u>Yusuf</u>, 35 F.3d at 713.

Further, Plaintiff's allegations with respect to her co-teacher, non-party DelSeni, are insufficient to show that SBU discriminated against Plaintiff based on her gender.  Plaintiff alleges that DelSeni referred to Plaintiff as a "princess" in a September 16, 2017 text message to Mangano.  (TAC ¶ 32.)  She alleges that Mangano had expressed concerns to DelSeni that Plaintiff had not returned his calls, and DelSeni asked Mangano if she should fill out paperwork for Plaintiff "or should [she] wait in case she's thrown out of the program."  (TAC ¶¶ 32-33.)  Plaintiff claims that "Mangano didn't defend Plaintiff, his student, because upon presumption, he was upset that Plaintiff, a female, was putting him off/rebuffing him and hadn't returned his calls."  (TAC ¶ 32.)  Such conclusory allegations -- involving a third-party not employed by SBU -- cannot support a gender-based discrimination claim against SBU.  Indeed, Plaintiff does not allege that Mangano responded to DelSeni's comment other than to confirm that Plaintiff had not returned his calls.  (TAC ¶ 32.)

Therefore, Plaintiff's new allegations fail to allege any facts from which one could infer discriminatory intent on the part of SBU. As such, Plaintiff fails to state a gender-based discrimination claim under Title IX.

2.  <u>Sexual Harassment</u>

Plaintiff also fails to allege sufficient facts with regard to her sexual harassment allegations. Though Plaintiff's allegation that she subjectively perceived the environment to be hostile is assumed true for purposes of this motion, Plaintiff's TAC fails to allege any facts demonstrating that she was required to endure an environment that objectively was severely or pervasively hostile. <u>See Torres v. Pisano</u>, 116 F.3d 625, 631 (2d Cir. 1997) ("Conduct that is 'merely offensive' and 'not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993))).

Plaintiff conclusively alleges that after she refused to meet Mangano off-campus for breakfast, he "reprimand[ed]" her, and explained that her refusal was "concerning." (TAC ¶ 25.) Plaintiff further alleges that Mangano emailed, texted, and telephoned her to arrange for another time to meet. (TAC ¶¶ 17-18.) She claims that she felt uncomfortable receiving unwanted phone calls and text messages, and perceived Mangano's persistence

to meet as harassment.  (TAC ¶ 18.)  However, Plaintiff also alleges that she refused to attend her supervisor's meetings and failed to respond to his attempts to communicate with her about her student teaching.  (TAC ¶¶ 18, 24-25, 30-31, 50.)  As alleged, Plaintiff's co-teacher reminded Plaintiff that communicating with Mangano was part of her duties as a student teacher.  (TAC ¶ 30.) Thus, while Plaintiff may have subjectively perceived her supervisor's attempts to communicate with her as harassment, objectively, and as alleged in the TAC, Plaintiff's supervisor was attempting to meet with Plaintiff as he was meeting with the other similarly-situated seminar students -- both male and female. (TAC ¶¶ 24, 25; Pl. Opp. at 13.)

Likewise, Plaintiff's allegations that Mangano met with her individually to discuss her performance following her student teaching sessions, expressed concern that she had not responded to his messages, "berated" her and made "demeaning" and "disparaging" remarks about her choice to become a teacher (TAC ¶¶ 24, 43-45), fail to demonstrate that she was subjected to a hostile environment "because of her sex."  Gregory v. Daly, 243 F.3d 687, 694 (2d Cir. 2001) (There must be "factual circumstances that permit the inference that plaintiff was subjected to a hostile [] environment because of her sex." (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998))).  Even drawing all reasonable inferences in Plaintiff's favor, the TAC does not plausibly allege

that her education environment was permeated with discrimination based on her sex.  Therefore, Plaintiff fails to allege a hostile educational environment claim.

### 3.   Quid Pro Quo

With regard to Plaintiff's quid pro quo allegations, the TAC fails to allege any facts demonstrating that she was subject to sexual advances by Mangano or any other SBU official.  See Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d 491, 500 (E.D.N.Y. 2001) (To state a sexual harassment claim under a quid pro quo theory, a plaintiff must allege "that she was subject to unwelcome sexual conduct." (citation omitted)).  Plaintiff's allegations that Mangano made numerous attempts to contact her, shook her hand, and on one occasion touched her upper arm (TAC ¶¶ 28-29, 34-35, 43-45, 48) are insufficient to show sexual conduct to establish a quid pro quo claim.  See Crandell v. New York College of Osteopathic Medicine, 87 F. Supp. 2d 304, 318 (S.D.N.Y 2000) ("In order to state a claim for quid pro quo harassment, plaintiff must allege that a tangible employment [or educational] action resulted from a refusal to submit to a supervisor's sexual demands." (internal quotation marks and citation omitted)).  Additionally, Plaintiff's allegation that during a September 27, 2017 one-on-one class "Mangano held his pen" in a "sexually suggestive" manner "to intimidate plaintiff" (TAC ¶ 47) is too conclusory to state a quid pro quo claim under Title IX.  See

Shalom v. Hunter Coll. of City Univ. of N.Y., 645 F. App'x 60, 62 (2d Cir. 2016) (summary order) (rejecting conclusory allegation that professor "made multiple implied sexual advances").  Thus, when construing the facts in the light most favorable to Plaintiff, the TAC fails to state a quid pro quo claim pursuant to Title IX.

####    4.   Notice of Alleged Discrimination

Even if Plaintiff had adequately pleaded discrimination, and she has not, her apparent failure to notify SBU officials of the alleged discrimination is fatal to her Title IX claim.  A plaintiff's complaint to school officials must be specific regarding the nature of the harassment to charge the school with notice of an alleged Title IX violation.  See, e.g., Manolov, 952 F. Supp. 2d at 533 ("Without a showing that [plaintiff's] complaints to [university officials] referenced alleged [ ] sexual discrimination, and not merely generic perceived teaching failures, the College cannot be charged with notice of an alleged violation of Title [ ] IX.")

The TAC does not meet this standard.  Plaintiff alleges that she made a "gender[-]based harassment complaint against Mangano" on September 29, 2017.  (TAC ¶¶ 51-52, 64.)  However, as noted in the Prior Order, the Court considers the email complaint to Galante and observes that the email consists of general complaints that Mangano criticized her performance and that he had a "personal beef" with her for not attending his student teaching

breakfasts.  <u>Sutton</u>, 2020 WL 6532937, at *10 (citing Galante Decl., Ex. 2.)  Nowhere in Plaintiff's email does she reference gender-based discrimination or sexual harassment.  Rather she states, "I do not think other student teachers are being treated the way I am being treated.  [Mangano is] holding it against me that I didn't meet with him over the summer."  (See Galante Decl., Ex. 2.)

In the TAC, Plaintiff alleges that following her removal from student teaching, on October 17, 2017, Plaintiff emailed Jordan stating, "[d]id Dr. Galante happen to mention to you that I had made a complaint to her about a male professor who was harassing me."  (TAC ¶ 73)  However, this non-specific reference to her September 29, 2017 email complaint fails to demonstrate that an official at SBU was put on actual notice of gender-based harassment by Galante.  <u>See</u> <u>Murray v. N.Y. Univ. College of Dentistry</u>, 57 F.3d 243, 250 (2d Cir. 1995) (finding no reasonable basis to infer notice where complaint lacked allegations that plaintiff informed university officials about sexual connotations or sexual harassment).  Similarly, Plaintiff's general allegation that "Galante knew Plaintiff was a female and Mangano was a male and that therefore any complaint about his abusive behavior would have been considered gender based" is wholly insufficient to infer SBU's notice of gender discrimination or harassment.  (TAC ¶ 98.)[4]

---

[4] The Court notes that paragraph 98 of the TAC is incorrectly marked as paragraph 96.

Because the TAC fails to allege gender-based discrimination or harassment, or that SBU had knowledge of the alleged discrimination, Plaintiff's renewed pleading fails to withstand Defendants' motion to dismiss. Thus, Plaintiff's Title IX discrimination claim against SBU is DISMISSED with prejudice.

5. <u>Retaliation</u>

The TAC fails to state a Title IX retaliation claim because Plaintiff has not alleged facts plausibly suggesting that she engaged in a protected activity under Title IX, namely that she opposed discrimination proscribed by Title IX.

To state a claim for retaliation, a plaintiff must first establish a <u>prima facie</u> case by demonstrating: "(1) protected activity; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse reaction." <u>Papelino</u>, 633 F.3d at 91; <u>Sutter v. Dibello</u>, No. 18-CV-0817, 2019 WL 4195303, at *14 (E.D.N.Y. Aug. 12, 2019) ("[C]omplaints must be sufficiently specific to make clear that the [plaintiff] is complaining about conduct prohibited by the applicable discrimination statute."), <u>report and recommendation adopted</u>, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019). General complaints of harassment and bullying are insufficient to state a <u>prima facie</u> case of retaliation. <u>See, e.g.</u>, <u>Johnson v. City Univ. of N.Y.</u>, 48 F. Supp. 3d 572, 577 (S.D.N.Y. 2014) (to establish a

25

retaliation claim, the plaintiff must have complained about discrimination based on a protected characteristic —- that is, conduct in violation of the underlying statute).  Even where a plaintiff believes she is complaining of conduct that violated Title IX, "a mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by <u>objective</u> good faith."  <u>Id.</u> (emphasis in original); <u>Drumm v. SUNY Geneseo Coll.</u>, 486 F. App'x. 912, 914 (2d Cir. 2012) ("[P]laintiff's allegations that her supervisor 'berated' her and made other harsh comments [ ] amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination." (quotation marks omitted)).

Like her SAC, Plaintiff's TAC fails to adequately allege that she had a reasonable, good faith belief that she challenged conduct constituting gender discrimination.  As discussed <u>supra</u>, Plaintiff's September 29, 2017 complaint to Galante did not reference gender-based discrimination or sexual harassment. Rather, Plaintiff generally complained about "bullying," that Mangano stated that her "teaching was horrible," that he "make[s] [her] feel bad about [herself] and [her] decision to pursue teaching," and make[s] [her] want to cry." (Galante Decl., Ex. 2.)  Thus, Plaintiff could not reasonably have believed that she complained of conduct prohibited by Title IX.  In fact, during an

October 11, 2017 conversation with Galante, Plaintiff acknowledged that her September 29 email was "an expression of her emotional reactions" and that her claims about Mangano's intentions were "based on feelings not on actions." (Galante Decl., Ex. 5.)

Similarly, Plaintiff's misplaced reliance on her October 19, 2017 email to Galante, Lindblom, and Jordan (following her dismissal from student teaching) does not save her claim. That email states, "[a]nd why you are coercing me to sign a contract in order for me to be placed again? Can you please tell me what specifically did I do wrong to be suspended? Why am I being suspended? This is discrimination & differential treatment." (TAC ¶ 75; Galante Aff., Ex. O.) Wholly lacking from Plaintiff's email is any indication that Plaintiff believed she was being treated differently because of her gender. See Moore v. City of N.Y., 745 F. App'x 407, 409 (2d Cir. 2018) ("A mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if 'nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.'" (quoting Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013))). Plaintiff's email demonstrates that Plaintiff believed she was being "suspended" because "Dr. Mangano had a bias against [her] from day one because [she] did not attend his summer breakfast," and not because of gender bias. (See Galante Decl.,

Ex. O.)  Therefore, as Plaintiff fails to plead that she engaged in a protected activity, she fails to state a Title IX retaliation claim.[5]  As such, Plaintiff's Title IX retaliation claim is DISMISSED with prejudice.

> B.  <u>Plaintiff's Section 1983 Claims Must Be Dismissed</u>

The TAC re-asserts Section 1983 claims against SBU and the individually-named defendants based on alleged violations of the First Amendment and due process and equal protection under the Fourteenth Amendment.[6]  Defendants argue that the Section 1983 claims against the individually-named Defendants fail under the doctrine of qualified immunity and that Plaintiff fails to allege any facts regarding Defendant Stanley's personal involvement.

---

[5] The TAC also fails to allege the requisite causal connection between her complaint to Galante and her dismissal from SBU's program.  Rather, SBU had a non-discriminatory basis for Plaintiff's dismissal: her poor performance evaluations, lack of professionalism, and failure to complete the reflection assignment.  (<u>See</u> Jordan Decl., Ex. 3; TAC ¶ 115.)  Plaintiff acknowledged that she had "issues" with teaching, that did not arrive to school "on time," and was leaving early.  (<u>See</u> Galante Decl., Ex. 5.)  Additionally, Plaintiff received a negative performance evaluation from her co-teacher.  (Galante Decl., Ex. 5.)

[6] In opposition, Plaintiff contends that Taber and Stanley, "who both have resigned from Stony Brook and moved out of state, are automatically replaced in their official capacity by their successors[.]"  (Pl. Opp. at 6.)  However, the Prior Order dismissed with prejudice Plaintiff's Section 1983 claims against SBU and the individual Defendants in their official capacities pursuant to Eleventh Amendment immunity.  <u>Sutton</u>, 2020 WL 6532937, at *10-12.  Therefore, the Court only considers the Section 1983 claims against Defendants in their individual capacities.

(Defs. Br. at 12.)   However, because the Court finds that the TAC fails to allege any constitutional claims, it need not determine whether the individual Defendants are entitled to invoke the defense of qualified immunity or whether Plaintiff adequately pleads Stanley's personal involvement.   See Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007) ("When a defendant . . . invokes qualified immunity . . ., a court must first consider [whether] . . . the facts, viewed in the light most favorable to the plaintiff, show that the [defendant's] conduct violate[d] a constitutional right[.]   If the answer to this question is no, 'there is no necessity for further inquiries concerning qualified immunity.'" (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001))).

     1.   First Amendment Retaliation[7]

In light of Plaintiff's pro se status, the Court evaluates Plaintiff's First Amendment retaliation claim against the individually-named Defendants pursuant to Section 1983.   A plaintiff asserting a First Amendment retaliation claim "must

---

[7] The TAC appears to allege a First Amendment claim against SBU. (See TAC ¶ 223.)   However, the First Amendment does not directly provide a basis for damages, but is usually enforced against a state actor through Section 1983.   Sank v. City Univ. of N.Y., No. 10-CV-4975, 2011 WL 5120668, at *6 (S.D.N.Y. Oct. 28, 2011) ("Because [ ] Section 1983[ ] provides a remedy for alleged constitutional violations, [plaintiff] cannot base claims directly on the First, Fourth and Fourteenth Amendments.")   Further, as discussed supra, Note 6, Eleventh Amendment immunity precludes Plaintiff's Section 1983 claims against SBU.

advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. SUNY Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 106-07 (2d Cir. 2001) (citations omitted). With regard to the causal connection element, to survive a motion to dismiss, a plaintiff must allege facts to show that the adverse action would not have been taken absent the plaintiff's protected speech. See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). A retaliation claim is not plausible where the pleading indicates there was an alternative, non-retaliatory motive for the defendant's conduct. See Holmes v. Poskanzer, 342 Fed. App'x. 651, 653 (2d Cir. 2009); Grossi v. City of N.Y., No. 08-CV-1083, 2009 WL 4456307, at *8 (E.D.N.Y. Nov. 30, 2009) (dismissing retaliation claim for lack of plausibility where plaintiffs' pleading indicated that there was an alternate, non-retaliatory motive for the defendant's conduct).

Plaintiff alleges that "[d]irectly following [her] September 29, 2017 gender[-]based harassment complaint about Supervisor Mangano, Defendants began a campaign to silence Plaintiff for speaking out." (TAC ¶ 52.) Plaintiff also claims that she was removed from student teaching one day before her scheduled exam because Defendants "wanted to punish Plaintiff for speaking out." (TAC ¶ 123.) She alleges that Galante's contract

and reflection assignment constituted "a means to prevent Plaintiff from exercising her right to free speech/speaking out and freedom of expression." (TAC ¶ 113.) She further claims that SBU "chill[ed] her free speech" when she was told to "cease communication" with the English Department, not to attend seminar class during her appeal process, and when her university email account was disabled. (TAC ¶ 90; Pl. Opp. at 20-21.)

However, the TAC fails to allege a causal connection between her email complaint to Galante and her dismissal from SBU. As noted in the Prior Order, "Defendants had non-retaliatory reasons for Plaintiff's dismissal from SBU, namely: Plaintiff's lack of professionalism and preparedness, excessive lateness, and her failure to complete the reflection assignment and refusal to agree to the standards of professionalism outlined in the student teaching contract." Sutton, 2020 WL 6532937 at *13. Indeed, Plaintiff concedes that she failed to complete the reflection assignment or sign the student teaching contract. (TAC ¶ 115.) Further, a disinterested Appeals Committee –- the Graduate Council Appeals Committee ("GCAC") -- unanimously concluded that Plaintiff was rightfully dismissed. (Jordan Decl., Ex. 3.) The GCAC report attached to the December 19, 2017 appeal denial letter states that Plaintiff "did not meet program requirements," and that "other students with similar failure to perform [ ] were treated in a similar manner." (Jordan Decl., Ex. 3.) Thus, non-retaliatory

31

reasons for Plaintiff's dismissal from the Education Program and SBU exists and Plaintiff's retaliation claim is not plausible. See Garcia, 280 F.3d at 107 (no causal connection between student's letter to school official and his subsequent dismissal from school because, inter alia, numerous school officials approved student's dismissal based on his "persistent academic deficiencies").

Moreover, Plaintiff's allegation that Defendants dismissed her from student teaching one day prior to her exam "to punish Plaintiff for speaking out by stopping her from becoming a teacher" is wholly speculative. (TAC ¶¶ 121, 123, 240); see Geagan v. City Univ. of N.Y., No. 09-CV-3271, 2011 WL 3370395, at *12-13 (S.D.N.Y. July 14, 2011) (a student's belief that her appeal to re-enroll in nursing program was denied in retaliation for her exercise of her free speech rights was wholly speculative).[8] Because the TAC fails to allege additional facts demonstrating the requisite causal connection, Plaintiff's First Amendment retaliation claim is DISMISSED with prejudice.

---

[8] Additionally, Plaintiff's allegation that DelSeni, her co-teacher, "chill[ed] Plaintiff's free speech" when she prevented Plaintiff from informing her students why she was leaving mid-semester fails to allege a retaliation claim for the simple reason that DelSeni is not a defendant. (TAC ¶ 66.)

2. <u>Equal Protection</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). Although the standards for equal protection and Title IX "may not be wholly congruent," <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 555 U.S. 246, 247 (2009), in either case "the plaintiff must show that the defendant discriminated against her, that the discrimination was intentional, and that discrimination was a motivating factor for the defendant's actions." <u>Chandrapaul v. City Univ. of N.Y.</u>, No. 14-CV-790, 2016 WL 1611468, at *17 (E.D.N.Y. Apr. 20, 2016) (citing <u>Yusuf</u>, 35 F.3d at 714).

Plaintiff's equal protection claim against Defendants must be dismissed because it is based on the same allegations that support her Title IX discrimination claims. <u>R.S. v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.</u>, 371 Fed. App'x. 231, 234 (2d Cir. 2010) (where a plaintiff alleges parallel Title IX and equal protection claims, they may fail for the same reason). As discussed <u>supra</u>, the TAC does not plausibly allege facts suggesting that Defendants' discriminated against Plaintiff on the

basis of her gender.  Thus, Plaintiff's equal protection claim is DISMISSED with prejudice.

### 3. <u>Procedural Due Process</u>

The TAC fails to allege additional facts that demonstrate any of the individually-named defendants violated Plaintiff's procedural due process rights.  First, to the extent that Plaintiff continues to assert that her dismissal from SBU was non-academic, and therefore disciplinary dismissal standards should apply, the Court disagrees.  As discussed at length in the Prior Order, Plaintiff's dismissal was academic because it was based on her student teaching performance and professionalism.  See <u>Sutton</u>, 2020 WL 6532937, at *15 (citing <u>Wolff v. State Univ. of N.Y. Coll. at Cortland</u>, No. 13-CV-1397, 2016 WL 9022503, at *18 (N.D.N.Y. Feb. 5, 2016) (upholding dismissal of student as academic due to faculty concerns about his professionalism and suitability to be a teacher)).  Nothing in the TAC changes this conclusion.  As such, the Court analyzes the TAC under the "far less stringent" procedural requirements of due process for academic dismissals.  <u>Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.</u>, 804 F.3d 178, 192 (2d Cir. 2015)) (quoting <u>Bd. of Curators of Univ. of Mo. v. Horowitz</u>, 435 U.S. 78, 86 (1978)).

"In the context of an academic dismissal a student is afforded the procedural process required by the Fourteenth Amendment where (1) the school has 'fully informed [the student]

of the faculty's dissatisfaction with [the student's] progress and the danger that this posed to timely graduation and continued enrollment,' and (2) '[t]he ultimate decision to dismiss [the student] was careful and deliberate.'" Dean, 804 F.3d at 191 (quoting Horowitz, 435 U.S. at 85). Moreover, "[c]ourts do not intrude on the authority of colleges to dismiss students for purely academic reasons." Murray v. N.Y. Univ. College of Dentistry, No. 93-CV-8771, 1994 WL 533411, at *4 (S.D.N.Y. Sept. 29, 1994), aff'd. 57 F.3d 243.

Upon review of the TAC, the allegations demonstrate that she was provided with more process than that which was due. To be sure, Defendants provided Plaintiff with notice of her deficiencies, an opportunity to remedy those deficiencies, and a warning of the consequences for failure to cure the deficiencies. (See Galante Decl., Exs. 5 & 7.) Plaintiff admits that she refused to meet to Galante's milestones, failed to complete a reflection assignment, and declined to sign a student teaching contract. (TAC ¶ 115, Ex. B.) Additionally, the decision to dismiss Plaintiff from SBU was confirmed by a disinterested appeal panel -- providing Plaintiff with more process than that which is due for academic dismissals. (See Jordan Decl., Ex. 3 ("The program has provided evidence that the student did not meet program requirements, thus the dismissal was not arbitrary. There is evidence that other students with similar failure to perform (e.g., lateness/absence

and poor teaching reviews) were treated in a similar manner: given an opportunity to improve, and if they rejected the opportunity or failed to improve, they faced dismissal from the program.")); see Horowitz, 435 U.S. at 92 ("Courts are particularly ill-equipped to evaluate academic performance.")

As discussed in the Prior Order, Plaintiff's allegations that she was not afforded a hearing or the opportunity to call witnesses are irrelevant because it is well-established that "a student facing academic dismissal is not entitled to a hearing or to cross examine witnesses." McCann v. Univ. at Buffalo, No. 13-CV-0381, 2016 U.S. Dist. LEXIS 76829, at *38 (W.D.N.Y. June 10, 2016); See Horowitz, 435 U.S. at 90.

Therefore, the TAC fails to allege any facts that plausibly show a procedural due process violation arising out of the decision to remove or dismiss Plaintiff from the Education Program and SBU.[9]  This claim is thus DISMISSED with prejudice.

---

[9] Plaintiff also alleges that the Registrar at SBU violated FERPA by failing to "honor[] a FERPA request for Plaintiff to see documents used to expel her."  (TAC ¶ 241.)  Though this claim is not against any individual Defendant, the Court notes that FERPA violations are not actionable under Section 1983.  Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).  Thus, to the extent alleged, this claim is DISMISSED.

4.   Substantive Due Process

The TAC also fails to state a claim for a violation of substantive due process.  Plaintiff asserts that she was deprived of substantive due process because she was denied the right to continue her education and was removed from student teaching one day before a scheduled professional qualifying video EdTPA exam. (TAC ¶¶ 239-40.)  She claims that "Defendants deprived Plaintiff substantive due process by blocking her form participating in the field of teaching, her chosen profession," because she is "deficient of the necessary qualifications required for employment as a teacher in New York."  (TAC ¶ 257.)  The Court disagrees.

"To state a substantive Due Process claim, a plaintiff must establish that a protected liberty or property interest was infringed in an arbitrary or irrational manner that shocks the conscience."  Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 338 (E.D.N.Y. 2014) (citations omitted).  Though "there is no substantive due process right to public education," Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 217-18 (2d Cir. 2012), under certain circumstances, courts have recognized a substantive due process right to pursue a chosen career.  Toussie v. Cnty. of Suffolk, 806 F. Supp. 2d 558, 579-80 (E.D.N.Y. 2011) (citations omitted).  To state a claim, "one must have no ability to practice one's profession at all."  Id. at 579.

Plaintiff's allegations cannot meet this standard.  As discussed _supra_, Plaintiff was provided with the opportunity to complete a reflection assignment and execute a contract that would have afforded her the ability to continue student teaching the following semester.  (See Galante Decl., Exs. 3 & 5.)  Plaintiff refused that offer.  (TAC ¶ 115.)  Furthermore, Plaintiff cannot argue that she is unable to pursue a teaching career because there are no allegations that Defendants prevented her from pursuing her chosen profession elsewhere.  See Rodriguez v. Margotta, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) ("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.")

In sum, accepting the TAC's allegations as true and construing them in the light most favorable to the Plaintiff, Plaintiff has failed to allege that Defendants precluded her from her chosen career.  Therefore, her substantive due process claim is DISMISSED with prejudice.

V.   Leave to Amend

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint," Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999), unless doing so would be futile, Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 399 (S.D.N.Y. 2002).  The Court declines to grant Plaintiff leave to file a fourth amended complaint because doing

so would be futile.  Plaintiff has already filed four complaints and, in doing so, has failed to cure the deficiencies identified by the Court in the Prior Order.  Ercole  v. LaHood, No. 07-CV-2049, 2011 WL 1205137, at *15 (E.D.N.Y. Mar.29, 2011) aff'd, 472 F. App'x 47 (2d Cir. 2012) (holding that the Court need not grant pro se plaintiffs leave to amend when it previously has been given and the plaintiff has "faile[ed] to cure the deficiencies previously identified by the Court.")   Therefore, in its discretion, the Court denies further leave to amend.

CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss (ECF No. 65) is GRANTED in its entirety, and Plaintiff's claims are DISMISSED with prejudice.  Leave to amend is DENIED as futile.  The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

Because Plaintiff registered for and consented to electronic service of Court Orders in this matter (ECF No. 50), she will not receive a copy of this Memorandum & Order by mail.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  August   18  , 2021
        Central Islip, New York